JULIAN NAETZKER et al., Respondents, v BROCTON CENTRAL SCHOOL DISTRICT, Appellant.

Fourth Department, December 12, 1975

*Brandt & Laughlin, P. C. (Stephen Teret* of counsel), for appellant.

*O'Shea, Adamson, Reynolds & Napier (C. DeForest Cummings, Jr.,* of counsel), for respondents.

MAHONEY, J. Under an agreement entered between the parties, petitioners (Architects) were retained to provide administrative supervision of a building construction project being undertaken by appellant (School District). The agreement provided for arbitration of all questions in dispute arising under their contract. Following the award of the general construction contract in March, 1967, the Architects undertook their administrative supervision duties, including approval of roofing specifications submitted by the roofing subcontractor as well as periodic issuance of certificates for payment to be made to the general contractor as the work progressed. On September 3, 1968 the construction project was substantially completed with final certificate for payment (less retainage amount being held for an additional one-year guarantee period) being issued by the Architects on November 7, 1969. In August, 1970, following notification from the School District of a roof leakage problem in the cafeteria wing of the constructed building, the Architects advised the general contractor by letter dated September 15, 1970 of its obligation to make repairs to the roof at no cost to the School District; and further advised that, providing such roof repairs were satisfactorily made prior to the meeting scheduled for September 23, 1970 by the School District, the Architects would go on record stating the general contractor's eligibility to receive final payment of retained percentage money due under its construction contract with appellant. By letter dated September 22, 1970 the Architects advised the School District that, in their opinion, the general contractor had completed all contractual obligations and was eligible to receive final payment. Following such final payment to the general contractor, the cafeteria

roof leakage problem continued, which ultimately precipitated the School District's demand for arbitration, dated June 20, 1974, designating the nature of the dispute as a "controversy concerning the planning, construction, supervision, condition and payment of roofs on portions of Brocton Central School buildings" and claiming relief by way of "reimbursement for cost of replacement of roof".

Upon receipt of the demand for arbitration, the Architects moved for a stay of arbitration pursuant to CPLR 7503 (subd [b]) on the ground that the School District's claim was time-barred under CPLR 7502 (subd [b]) and 214 (subds 4, 6) by reason that any claim or cause of action against petitioners accrued more than three years prior to the date of demand for arbitration. A trial was thereafter held, limited to the issue of timeliness. On behalf of the Architects, testimony was adduced that, following their letter of September 22, 1970 advising appellant of the general contractor's eligibility for final payment, they had no specific discussion with the school board until February, 1974 concerning the cafeteria roof problem, other than incidental discussions between the parties in May, 1971 relative to review of roof repair specifications for another building which were contemplated by the school board. At that time the Architects undertook certain testing of the cafeteria roof and submitted to the school board a written report dated May 20, 1974 which indicated that the subject cafeteria roof had not been constructed in accord with the construction contract specifications.

On behalf of the school board, testimony was presented concerning a conference had with the Architects on June 21, 1971 for the purpose of reviewing roof specifications for contemplated roof repairs of a building, other than the cafeteria wing building, during which the subject of the roof leakage problem on the cafeteria wing building was discussed. However, the testimony indicated that the cafeteria roof leakage problem was raised only incidental to the subject matter of that meeting.

There was further testimony on behalf of the school board that subsequent conversations were had concerning the cafeteria roof problem on unspecified dates in the latter part of 1971 and extending into 1972. It is significant that the school board's witness conceded unequivocally that, during the course of these discussions, at no time did the Architects lull the school board into a sense of security that the Architects

would repair the leaking roof. After conclusion of the proof relative to timeliness, trial term held that the school board's claim or cause of action was grounded in malpractice and thus was foreclosed by the applicable three-year Statute of Limitations, there being no basis for any extension of time by virtue of the "continuous treatment" doctrine under standards established in *Borgia v City of New York* (12 NY2d 151).

In urging reversal, appellant here asserts three alternate contentions to sustain timeliness in its demand for arbitration, viz.:

(a) conceding its claim to be grounded in malpractice with a three-year limitation period, augmentation of "continuous treatment" time rendered its demand timely;

(b) its claim being also one for breach of contract, the governing six-year limitation was applicable; and

(c) the gross negligence of the Architects in the performance of their contractual duties constituted constructive fraud, similarly governed by a six-year Statute of Limitations.

Ascertainment of a time limitation's effective date involves a two-step determination. The subject matter of the claim or cause of action must first be characterized to determine which period of limitation is applicable, followed by a determination as to when the cause of action accrued. Where accrual is outside the applicable period of limitation, the action is barred.

Appellant claims that it has three separate causes of action, viz.: an action in malpractice, augmented by the continuing treatment doctrine; breach of contract; and constructive fraud. The preliminary issue for determination, therefore, is upon which of the three causes of action is appellant's claim truly grounded. Appellant's own characterization of its claim appears in its notice of intention and demand to arbitrate. The nature of the dispute is there described as a "controversy concerning the planning, construction, supervision, condition and payment of roofs in portions of Brocton Central School buildings", with relief sought being "reimbursement for cost of replacement of roof". Appellant's complaint, therefore, appears to be that the cafeteria roof was still leaking four years after construction and that the Architects' "planning, construction, supervision, condition and payment" was responsible for that condition. In addition, appellant complains that the Architects breached their contractual duty as appellant's architects by issuing a certificate for final payment one week

after notifying the general construction contractor of its obligation to make necessary repairs. On the basis of appellant's own characterization of its claims against petitioners, it appears that appellant's cause of action is initially and primarily grounded in architectural malpractice.

Where a party alleges causes of action in both professional malpractice and breach of contract, both will normally be considered together for the purposes of limitation of time. The shorter period of limitation applies when an injury is suffered as the result of malpractice, although the relationship between the parties originated in contract *(Siegel v Kranis,* 29 AD2d 477, 478; *Klein v Parke-Bernet Galleries,* 21 AD2d 772; *Carr v Lipshie,* 8 AD2d 330). The rationale of such general rule is that, in the area of malpractice,. the defendant's common-law duty and contractual duty are one and the same and, therefore, at least for time limitation purposes, the action is one in negligence *(Gautieri v New Rochelle Hosp. Assn.,* 4 AD2d 874, affd 5 NY2d 952; see, also, *Webber v Herkimer & Mohawk St. R. R. Co.,* 109 NY 311).

An exception to the foregoing general rule is made where there is an agreement to obtain a specific result or to assure against miscarriage. In such a case the six-year contract period is applicable *(Glens Falls Ins. Co. v Reynolds,* 3 AD2d 686; *Robins v Finestone,* 308 NY 543). However, where the gravamen of the action is professional malpractice and no agreement is alleged which would indicate an intent to achieve a particular objective in the performance of service, then the three-year period of limitation applies *(Wilkin v Pickup & Co.,* 74 Misc 2d 1025, 1027; *County of Broome v Vincent J. Smith, Inc.,* 78 Misc 2d 889, 890). Such was the contractual agreement between the parties in the instant case. There was no contractual guarantee of a specific result, nor did the Architects agree to assure against miscarriage. In fact, the Architects specifically disclaimed responsibility for the general construction contractor's failure to carry out the work in accord with the contract documents and specifications. The general tenor of the standard owner-architect agreement entered into between the parties indicates an intent that the Architects were to be bound to perform services meeting the standard generally followed in the profession. The Architects contracted to use due care in the performance of their professional services and no more. Appellant cannot, therefore, avail

itself of the limitation period applicable to a breach of contract action.

Nor is there merit to appellant's contention that the Architects were guilty of gross misconduct tantamount to constructive fraud and, therefore, the six-year period of limitation provided in CPLR 213 (subd 1) applies. In order to plead such a cause of action in fraud for purposes of the six-year period of limitation, it must appear that the damage claimed was proximately and not remotely caused by the fraud *(Tulloch v Haselo,* 218 App Div 313, 316–317). Nor does alleged fraud in concealing an injury caused by professional malpractice preclude pleading the malpractice limitation period as a defense, since concealment of the injury is an integral part of the malpractice cause of action *(Kleinman v Lack,* 6 AD2d 1046; *Ranalli v Breed,* 251 App Div 750, affd 277 NY 630; *Conklin v Draper,* 229 App Div 227, affd 254 NY 620; *Tullock v Haselo, supra).* Therefore, when an action is commenced to recover damages for alleged malpractice, and an additional cause of action purports to declare in contract and in fraud and deceit, then, however labeled, the malpractice limitation period governs *(Golia v Health Ins. Plan of Greater N. Y.,* 6 AD2d 884, 885, affd 7 NY2d 931).

The record indicates that appellant's alleged cause of action in fraud is based upon the Architects' issuance of a final certificate for payment one week after it notified the general construction contractor that roof repairs were required. Appellant claims that such action constituted a false representation that the construction work was completed in accord with the contract documents. On the record here presented, such an action in fraud cannot be sustained. The proximate cause of the damage suffered by appellant is the alleged architectural malpractice of the Architects as opposed to the issuance of the certificate for final payment. It cannot logically be claimed that issuance of the certificate for final payment caused or contributed to the roof leakage problem. In addition, no concealment of the injuries ever occurred as appellant was continuously aware of the roof problem since August, 1970. Further, even if the Architects concealed the fact that construction work was not completed in accord with the contract specifications, such concealment would not operate to prevent application of the malpractice limitation period *(Kleinman v Lack, supra).*

Trial Term, therefore, correctly concluded that appellant's

cause of action was grounded in malpractice governed by the three-year period of limitation under CPLR 214 (subd 6).

The remaining issue concerns the determination of when appellant's cause of action in architectural malpractice accrued. The rule in cases where the gravamen of the action is professional malpractice is and has always been that the cause of action accrues upon the performance of the work by the professional *(Sosnow v Paul,* 43 AD2d 978, affd 36 NY2d 780; *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, 217; *Schiffman v Hospital for Joint Diseases,* 36 AD2d 31, 32). Where the action seeks damages for architectural malpractice, the cause of action accrues upon completion of the building *(Sosnow v Paul, supra).* An exception to the general rule is the "continuous treatment" doctrine. Where applicable, the doctrine suspends accrual of the malpractice cause of action until treatment ends or the professional relationship is terminated *(Borgia v City of New York,* 12 NY2d 151, 155, *supra; Siegel v Kranis,* 29 AD2d 477, 479–480, *supra).* Judicial recognition has been given to the application of the "continuous treatment" doctrine to architectural malpractice *(County of Broome v Vincent J. Smith, Inc.,* 78 Misc 2d 889, 892, *supra;* see, also, *Sosnow v Paul, supra).* However, the "continuous treatment" must be treatment for the same or related injury or damage, continuing after the alleged acts of malpractice; not mere continuity of a general professional relationship *(Borgia v City of New York, supra,* p 157; see, also, *Fonda v Paulsen,* 46 AD2d 540).

Application of the general rule of accrual of action upon completion of the building to the facts of the instant case obviously bars appellant's claim. Substantial completion of the project was attained on September 3, 1968, with appellant's notice of intention and demand for arbitration dated June 20, 1974 being well beyond the three-year period of limitation.

Nor will application of the "continuing treatment" doctrine qualify appellant's claim as timely. The Architects' final action in relation to the project in question was the confirmation by letter of their opinion that the general contractor had completed all its contractual obligations and was eligible to receive final payment. This letter was dated September 22, 1970. The record indicates that the Architects did not affirmatively concern themselves with the roof leakage problem until February, 1974, at which time they undertook to conduct certain tests. Thus, notwithstanding discussions had during

the course of reviewing roof repair specifications for another building, as testified to on behalf of appellant, there was a three and one-half year gap between the termination of the original professional relationship and the Architects' subsequent attempt to diagnose the problem. Without continuity of treatment for the particular problem involved, the rationale for suspending accrual of the cause of action dissolves. Thus, appellant's cause of action accrued upon termination of the professional relationship between the parties with reference to the subject project, being September 22, 1970, and was, therefore, time-barred under CPLR 214 (subd 6).

MARSH, P. J., SIMONS, GOLDMAN and DEL VECCHIO, JJ., concur.

Order unanimously affirmed, without costs.