SEARS, ROEBUCK & Co., Appellant, v ENCO ASSOCIATES, INC., Respondent.

Second Department, July 12, 1976

14

*Doran, Colleran, O'Hara, Pollio & Cunne, P. C. (Robert J. Aurigema* and *John R. Urban* of counsel), for appellant.

*Hart & Hume (Roger A. Goodnough* of counsel), for respondent.

HAWKINS, J. The question to be determined is whether the three-year Statute of Limitations governing actions in negligence applies, or whether either, or both, of the causes of action, sounding respectively in breach of contract and implied warranty, accord the plaintiff the benefit of the six-year statute.

The appeal by the plaintiff is from an order (and the judgment entered thereon) granting the defendant's motion to dismiss the complaint on the ground that the action is time-barred and that the second cause of action pleading breach of implied warranty fails to state a cause of action.

On May 15, 1967 the parties entered into a contract

whereby the defendant architects were to design a system of ramps to be integrated into the parking facilities of the plaintiff's new store located in the City of White Plains. The ramps were to provide a system of ingress and egress to several parking decks located above the store premises. The facility was also to be connected with an adjoining municipal multi-level parking structure. Consequently, the structure's plans required an elaborate system of ramps and heating units designed so as to permit removal of snow by mechanical means, thus reducing maintenance costs.

The contract was the standard American Institute of Architects form. Work was commenced in 1967 and completed in the spring of 1968. In April, 1970 the plaintiff observed cracks in the ramps. The action was initiated on June 23, 1972, with the complaint alleging damages in excess of $1,350,000, the cost of reconstruction and the consequential loss of business during the repairs amounting to $1,000,000 and $350,000, respectively.

The complaint alleges reliance upon the defendant's competence properly to design the ramp and snow-melting pipes. The first cause of action is in negligence, the cracks in the ramp allegedly resulting from the defendant's negligent design and engineering. The second cause of action pleads breach of implied warranty in that the defendant warranted that the structure built from the plans would be reasonably fit for the purposes intended. The third and concluding cause of action alleges that the defendant breached its contract by improperly designing the ramps.

The Special Term observed that it initially had to determine whether the claim, irrespective of labels, was essentially a claim for professional malpractice. If so found, the three-year Statute of Limitations would apply (citing *Carr v Lipshie,* 8 AD2d 330, affd 9 NY2d 983; *Brick v Cohn-Hall-Marx Co.,* 276 NY 259, 264; *Glens Falls Ins. Co. v Reynolds,* 3 AD2d 686). As amplified by the bill of particulars, the Special Term concluded that the complaint pleaded an action tortious in nature, sounding in malpractice; hence the three-year limitations statute was held to apply.

After so determining, the corollary question to be considered was when the action accrued and the time began to run under CPLR 214. Citing and quoting from our holding in *Sosnow v Paul* (43 AD2d 978, affd 36 NY2d 780) that an action against an architect accrues upon the completion of the build-

ing, and not upon the discovery of the building's defects, the Special Term concluded (83 Misc 2d 552, 556): " '[t]he rule in cases where the gravamen of the suit is professional malpractice is now and has always been that the cause of action accrues upon the performance of the work by the professional (*Gilbert Props. v Millstein*, 40 AD2d 100, 102; *Seger v Cornwell*, 44 Misc 2d 994)'."

The Special Term further noted that in *Sosnow v Paul* we had rejected the "discovery of the defect" approach of *Flanagan v Mount Eden Gen. Hosp.* (24 NY2d 427) as applicable only in foreign object medical malpractice cases; and further, that if the "continuous treatment theory" of *Borgia v City of New York* (12 NY2d 151) were to be applied, nevertheless, it would not avail plaintiff. The Special Term stated (p 557): "In the case at bar, whether the Statute of Limitations is held to begin to run on the performance of the work by the professional—sometime in 1967—or upon the completion of work in April, 1968 when the certificate of completion by defendant was issued, or even upon the date of the final inspection by the department of buildings in June 1968, it is clear that the date on which the cause of action accrued was more than three years before this action was commenced on June 28, 1972. Thus, it must be concluded that the cause of action for professional malpractice is barred by the New York Statute of Limitations." *(Sears, Roebuck & Co. v Enco Assoc.,* 83 Misc 2d 552, 557.)

In considering the second cause of action, breach of implied warranty of fitness for the purposes intended, the Special Term held that no such cause of action lies under New York Law against an architect, stating (p 557): "Thus, in *Aegis Prods. v Arriflex Corp.of Amer.* (25 AD2d 639), the court noted that implied warranties are limited to sales of goods and no warranty attaches to the performance of a service. (See *Perlmutter v Beth David Hosp.,* 308 NY 100; *Galletta v Cataneo,* NYLJ, Dec. 13, 1973, p 17, col 7.) If the service is performed negligently, the cause of action is based on negligence only. More recently, in *Schenectady Steel Co. v Trimpoli Gen. Constr. Co.* (43 AD2d 234), the court noted that the provisions of the Uniform Commercial Code do not apply to a contract for the rendition of services, but are limited to contracts for the sale of goods."

Subsequent to the rendition of Special Term's opinion herein on June 4, 1975, the Court of Appeals, in February,

1976, decided the case of *Matter of Paver & Wildfoerster (Catholic High School Assn.)* (38 NY2d 669), in which it considered whether allegations that architectural services improperly rendered came within the category of professional malpractice or whether, under certain circumstances, architects were subject to contractual responsibility as against liability in tort. If the latter, the three-year Statute of Limitations applied. As the most recent expression by the Court of Appeals on the question, it behooves us to determine whether it is dispositive of the appeal at bar.

The issue centered upon the timeliness of the owner's notice of arbitration for if "the reality" of the action was *ex delicto,* the arbitration proceeding would be time-barred. That contract, as at bar, was the standard A. I. A. contract, which provides for arbitration. (Neither party here has invoked the arbitration clause.) It posed the question: if an action is time-barred under a particular Statute of Limitations (CPLR 214), is it necessarily time-barred in arbitration under CPLR 7502 (subd. [b]). The Court of Appeals held (p 672): "In determining whether a claim for property damage is barred by the Statute of Limitations, however, the court should not be constrained by the special rules developed largely in personal injury actions and which depart from the general principle that time limitations depend upon, and are confined to, the form of the remedy." The opinion then continues (p. 672): "The remedies available in arbitration are, of course, not confined to traditional forms at law. Thus, if a claim is substantially related to matters encompassed by the substantive agreement, it is immaterial, in applying the Statute of Limitations, whether it lies in 'contract' or 'tort'. Hence, the owner's claim against the architects, although cognizable in law in either contract or tort malpractice, was timely asserted within the six-year period of limitations."

*Paver* considers *Sosnow v Paul* (36 NY2d 780, affg 43 AD2d 978), which affirmed, on memorandum, the holding of this court. In affirming, the Court of Appeals recognized the minority's concern, noting that they were (p 782) "properly repelled by the idea that a Statute of Limitations should preclude a cause of action before it ever accrued". In sum, *Paver* reaffirmed the "reality" or the "essence" as the touchstone whereby malpractice is differentiated from contract, rather than by the action's label.

Concededly, there has been an erosion or obliteration of

previously perceived distinct demarcations. In *Calhoun v Gale* (29 AD2d 766) we held, in a medical malpractice matter, that, however denominated, a physician's common-law duty and his alleged contractual relationship were equivalents. In *Carr v Lipshie* (8 AD2d 330, affd 9 NY2d 983, *supra*), accountants who had failed to discover a bookkeeper's false entries were held to have committed malpractice rather than breach of contract. The products liability matters, as in *Blessington v McCrory Stores Corp.* (305 NY 140), involving inflammable clothing, are properly classified as implied warranty, i.e., *ex contractu;* thus, the six-year statute applies, for there is no need to establish negligence.

Courts have long been troubled in fashioning elegant and significant distinctions between negligence and contract liability. As observed by Dean Roscoe Pound in his An Introduction to the Philosophy of Law (rev ed, pp 72–73), in the chapter on "Liability", there are profound difficulties in fitting legal doctrines into neat, divisible categories; indeed, he describes them as Procrustean:

"A systematist who would fit the living body of the law to his logical analytical scheme must proceed after the manner of Proscrustes. * * *

"The Anglo-American lawyer, thinking in terms of procedure, speaks of contracts and torts, using the former term in a wide sense. If pressed, he may refer certain enforceable claims to exact and duties of answering to the exaction to a Romanist category of quasi-contract, satisfied to say 'quasi' because on analysis they do not comport with his theory of contract, and to say 'contract' because procedurally they are enforced *ex contractu.* Pressed further, he may be willing to add 'quasi tort' for cases of common-law liability without fault and workmen's compensation—'quasi' because there is no fault, 'tort' because procedurally the liability is given effect *ex delicto.* But cases of duties enforceable either *ex contractu* or *ex delicto* at the option of the pleader and cases where the most astute pleader is hard pushed to choose have driven us to seek something better."

That the issue we are considering is not without much difficulty was noted by Prosser (Prosser, Torts [4th ed], § 92, p 621), who refers to the problem of whether tort or contract applies as fraught with "considerable confusion" and "difficult to generalize." Nor is the problem resolved by a "knee jerk" test (see *Victorson v Bock Laundry Mach. Co.,* 37 NY2d 395,

403), whereby, as if by reflex, one must necessarily conclude that whenever a defendant is in one of the learned professions, a fortiori, any plaint of incompetence causing damage is malpractice. If the services relate primarily, if not exclusively, to the profession involved, the gist or gravamen is malpractice, unless they fall within the recognized exceptions. The services here rendered, unlike those of carpenters or masons, were clearly professional. By training and by law they are peculiarly limited to those who qualify by accredited academic studies in the discipline and by subsequent governmental licensing. Their end product, the plans, no less constitute the practice of an honorable profession for which, if done negligently, responsibility attaches in similar vein as it does to a lawyer whose contract or will is unprofessionally drawn, or to a physician who misdiagnoses or maladministers. The aggrieved client or patient has his remedy in negligence, not in contract.

In *Webber v Herkimer & Mohawk St. R.R. Co.* (109 NY 311) it was early determined that a railroad passenger who sustains injuries is limited to negligence rather than contract despite the existence of a contract between the passenger and the railroad upon the purchase of a ticket of passage.

The "reality" or "essence" approach does not truly provide a ready yardstick, for reality, like beauty, may lie in the eye of the beholder. In squaring *Paver* to the instant appeal, we do not believe it necessary to squeeze the facts into the *Paver* mold, for, properly understood, it is limited to the facts. In resorting to arbitration, the traditional and constricting rules applicable to actions at law in negligence have been contractually waived by the parties. Thus the parties, by virtue of their contract, CPLR 7502 (subd [b]) notwithstanding, may resolve by arbitration what they could be time-barred from doing at law. *Paver* expressly and definitively so holds. An arbitrator need not be concerned with neo-scholastic disputations and exegeses to determine whether the genesis is *ex contractu* or tortious. It suffices, if he so finds, that the architect failed in his professional responsibility to draw plans in accordance with accepted and prevailing standards of his profession. The differentiation may be relevant only in arriving at the measure of damages *(Sosnow v Paul,* 36 NY2d 780, *supra).*

Under *Sosnow v Paul (supra),* the three-year Statute of Limitations was deemed to run from the date of the completion of the building. The clock does not begin to run from the

discovery of the defects but rather from the accrual of the cause of action. The date-of-discovery timetable is limited to foreign objects in medical malpractice cases (see, e.g., *Gilbert Props. v Millstein,* 40 AD2d 100, citing *Flanagan v Mt. Eden Gen. Hosp.,* 24 NY2d 427). As the Special Term here found, the work began in 1967 and was completed in 1968. The final inspection by the local Building Department was had in June, 1968, and, in the following month, the defendant was informed of the structure's problems. In any of these eventualities, more than three years had elapsed from completion. The date of the accrual of a cause of action in negligence or malpractice cannot be constructively advanced, thereby extending the statute, unless it comes within the medical discovery exception (see *Flanagan v Mt. Eden Gen. Hosp., supra*).

Note should be taken of the case of *Naetzker v Brocton Cent. School Dist.* (50 AD2d 142), wherein the Fourth Department, some two months prior to *Paver,* held the three-year statute applicable despite a contractual provision for arbitration. In *Paver,* the Court of Appeals commented upon *Naetzker,* noting that the "facts" were "remarkably like those in this case", but rejected the conclusion, stating (38 NY2d 669, 676, *supra*): "Recently, in *Matter of Naetzker v Brocton Cent. School Dist.* (50 AD2d 142), the rule was applied to an arbitration proceeding under facts remarkably like those in this case. And, it had been applied earlier in *Matter of Caudill, Rowlett, Scott (Board of Educ.)* (47 AD2d 610, *supra*). On the other hand, it has been said long ago and many times since that the Statute of Limitations only bars the remedy; it does not impair the underlying right *(Johnson v Albany & Susquehanna R.R. Co.,* 54 NY 416, 424; accord, e.g., *Hulbert v Clark,* 128 NY 295, 297–298). Thus, logically, the period of limitations to be applied should, with exceptions not to be proliferated, depend upon the form of the remedy. The contrary rule which obtains in actions at law is especially inappropriate in arbitration proceedings, for the remedies available in arbitration are not confined to the traditional forms at law."

As for the plight of the plaintiff, now that its cause of action is time-barred, it had more than sufficient time within which to have either initiated an action at law or to have commenced arbitration proceedings, the building's deficiencies having been observed well within the three-year limitation. Any Statute of Limitations necessarily creates an arbitrary

time frame. If by judicial gloss we were to apply the contract criterion of a six-year limitation, overruling our holding in *Sosnow* and, despite its subsequent affirmance, mandate that such actions accrue from the date of discovery of a building's defects, we should be imposing an open-ended, inchoate obligation, virtually in perpetuity. If, however, *Sosnow* remains unimpaired and time runs from the completion of the building, an owner who has slept on his rights for more than 3 years should not be given 8, 10 or 15 years within which to awaken.

Having decided against proceeding in arbitration, the plaintiff cannot now seek the boons of arbitration described in *Paver* (p 677):

"The arbitration limitation statute was hardly intended to do that. Its purpose was to bar stale claims, not to fragmentize claims into legal categories, the very categories from which arbitration frees those who choose arbitration as their mode of dispute determination.

"It is also evident that a complex of facts in legal analysis may present a facet of contract law, or tort law, or quasi-contracts, or equity jurisprudence. These are legal concerns and legal definitional boundaries which prescribe the mode of judicial dispute determination. These are not the concerns or the boundaries of arbitrational dispute determination, nor should they be made so indirectly."

If a new rule is to be promulgated rendering architects amenable to the six-year Statute of Limitations, irrespective of a reciprocal right to proceed in arbitration, but which neither party here has resorted to, it is for the Legislature so to do. Having recently amended CPLR 214 and added CPLR 214-a so as to provide for a lesser Statute of Limitations in medical malpractice actions, if so-minded that there is a "felt necessity", it can enact longer periods for architects or other professional pursuits.

The remaining aspect to be considered is the so-called "borrowing statute" under Michigan law and our corresponding statute (CPLR 202), for the contract provides that the law of Michigan shall apply. Special Term correctly held that since the action is barred under our law, Michigan would be required to apply the three-year malpractice Statute of Limitations under the latter's Revised Judicature Act (§ 600.5839).

Accordingly, the order and judgment should be affirmed.

HOPKINS, Acting P. J., LATHAM and TITONE, JJ., concur; MARTUSCELLO, J., concurs in the result.

Judgment and order of the Supreme Court, Westchester County, entered June 27, 1975 and June 16, 1975, respectively, affirmed, with $50 costs and disbursements.