John R. Tenney, J.
Defendants seek an order dismissing the complaint under CPLR 3211 (subd. [a], par. 5) because the causes of action are barred by CPLR 214 (subd. 6).
Plaintiff as executor of the estate of Caren Crouse Phelps was surcharged by the Surrogate of Oneida County because it voluntarily paid certain taxes which could not be collected because the Statute of Limitations barred the claim. In October of 1959, the plaintiff employed and retained the defendants as their attorneys in connection with the Phelps estate.
Plaintiff alleges that the barred payment was made in September, 1965, upon the advice of the defendant Francisco Penberthy, a partner in the law firm of Penberthy & De Iorio. The surcharge did not occur until the time of the final account, September 29, 1966. (See Matter of Phelps, 55 Misc 2d 290, affd. 28 A D 2d 1206 [Nov. 30, 1967].) On February 21, 1968, the application to appeal to the Court of Appeals was denied. (Matter of Phelps, 21 N Y 2d 644.)
Did plaintiff’s right of action accrue when the defendant advised plaintiff as executor to make the payment or at some later date? The defendant continued to represent the plaintiff up until the time he was denied leave to appeal to the Court of Appeals. (The last bill for services was dated April 22, 1968.) At any time up to that date, there was still a question regarding the existence of a cause of action. If the appellate court had reversed the Surrogate, then, of course, there would have been no surcharge and thus, no cause of action. There was sufficient doubt in the defendant’s mind regarding the legality of the surcharge that he pursued the matter to the Court of Appeals.
During this course of time, plaintiff would have been in an *12 extremely embarrassing position if it had instituted a suit and would have seriously disrupted the attorney-client relationship. The relationship between an attorney and client ‘ ‘ is marked by trust and confidence * * * and * * * the recipient of the service is necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the tactics are executed.” (Siegel v. Kranis, 29 A D 2d 477, 480.) The negligence which the “ Plaintiffs assert could not come to light until the conclusion of the litigation.” (Siegel v. Kranis, supra, p. 480.) To apply the rule that the cause of action accrued in September of 1965 would enable the attorney “ to chart the strategy to avoid the liability for his own negligence. Otherwise, negligence could be disguised by the device of delay, and an attorney rewarded by immunity from the consequence of his negligence.” (Siegel v. Kranis, supra, p. 480.)
To find that plaintiff’s action accrued at the time the advice was given in this particular case would be inconsistent with the responsibilities of an attorney to his client. The only correct interpretation is to apply the “ continuous treatment ” doctrine (Siegel v. Kranis, supra; Borgia v. City of New York, 12 N Y 2d 151); and thus find the Statute of Limitations did not start to run until the litigation was completed. Any other holding would endanger the attorney-client relationship and weaken the confidence the public should have in the Bar and its willingness to accept full responsibility for its actions.
The defendant contends that the rule in Troll v. Glantz (57 Misc 2d 572) should apply in this case. There, the sole claim of error against the attorney was his failure to mail a required notice to an insurance carrier. The court did not consider the “continuous treatment” rule, but found (p. 574) that “the cause of action rests not on the continued representation by the attorney but on his failure to act in November, 1959.”
In the present case the defendant was acting as attorney for the executor and his advice in 1965 was an inseparable part of his duties in that capacity, and they continued until such time as he completed Ms final efforts of appeal. In the course of the administration of an estate, an attorney will make many decisions, all of which are designed to adhere to the ultimate benefit and resolution of the estate. The client is entitled to the full protection of the law until the attorney has completed Ms work for the estate, which could, as in this case, go beyond the final accounting. (Wilson v. Econom, 56 Misc 2d 272.)
The handling of an estate by an attorney is analogous to the treatment by a doctor of a specific ilMess. Each decision or recommendation to the executor must be considered part of the *13 whole responsibility. It would be ludicrous to consider them as separate and distinct for the purpose of limiting liability. (Borgia v. City of New York, 12 N Y 2d 151.) The attorney’s responsibility is for the entire period of administration. He cannot, without cause, complete his duties to the executor until the estate is closed. (Canons of Professional Ethics, canon 44.)
The motion to dismiss is denied.