GILBERT PROPERTIES, INC., Respondent, *v.* JACOB A. MILLSTEIN, Appellant.

First Department, November 28, 1972.

*John J. Duffy* of counsel (*John E. Morris,* attorney), for appellant.

*Harry Grossman* for respondent.

EAGER, J.   This action is brought to recover for alleged malpractice of an attorney, and the appeal from an order striking the defense of the Statute of Limitations brings before this court the vexing problem of when the cause of action for attorney malpractice accrues.

The plaintiff, the owner of a building damaged on August 13, 1963 by the collapse of a wall of an adjoining school building during its demolition, retained the defendant in 1963 as its attorney to prosecute its claim for damages.   The plaintiff alleges that the defendant proceeded against the wrong parties, namely, against the City of New York and the Board of Education of the City of New York as the owners of the adjoining school building property, " when in truth and fact, the City of New York and Board of Education of the City of New York were formerly the owner of the said land and school building * * * and had conveyed title thereto to the New York City Housing Authority by a deed recorded * * * on March 5,

1963.'' It is further alleged that the defendant '' thereby caused the plaintiff herein to lose its action for damages on appeal [appeals to the Appellate Division and the Court of Appeals] because the proper owner was not sued by the plaintiff ''; that '' because of the aforesaid negligence of the defendant, the plaintiff was not in a position to commence suit against the true owner of the adjoining property, New York City Housing Authority, as the defendant failed to give due and timely notice of claim to the New York City Housing Authority pursuant to Sec. 50 of the General Municipal Law and any action by the plaintiff against the New York City Housing Authority is thereby precluded.''

Notwithstanding that the action is thus grounded on allegations of negligence occurring shortly after defendant's retainer in 1963, the action was not commenced until August 17, 1970. Since it further appears that the action was brought more than three years after the attorney-client relationship had terminated, we conclude that it was error to reject the validity of the defense grounded on the Statute of Limitations.

The statute, CPLR 214 (subd. 6), provides that an action for malpractice must be commenced within three years and it is further provided that the '' time within which an action must be commenced  *  *  *  shall be computed from the time the cause of action accrued to the time the claim is interposed '' (CPLR 203, subd. [a]).

The general holding, consistently followed in this State, is that a cause of action for malpractice accrues at the time of the wrongful acts or omissions of a defendant. (See Conklin v. Draper, 254 N. Y. 620; Schwartz v. Heyden Newport Chem. Corp., 12 N Y 2d 212; Schiffman v. Hospital for Joint Diseases, 36 A D 2d 31; Crowley v. Johnston, 96 App. Div. 319, 321; Troll v. Glantz, 57 Misc 2d 572 [App. Term]; Seger v. Cornwell, 44 Misc 2d 994; Goldberg v. Bosworth, 29 Misc 2d 1057; Harris v. Rosen, 28 Misc 2d 968.) In 1962, however, as an exception to this general holding as applied to medical malpractice cases, it became settled that when the course of medical treatment which includes the alleged wrongful acts or omissions has run continuously and is related to the same original condition or complaint, '' the ' accrual ' comes only at the end of the treatment.'' (Borgia v. City of New York, 12 N Y 2d 151, 155. See, also, O'Laughlin v. Salamanca Hosp. Dist. Auth., 36 A D 2d 51; Wear v. State of New York, 33 A D 2d 886.) This continuous treatment rule is held '' equally relevant to the conduct of litigation by attorneys. The resemblance between the continuous

treatment of a condition of a patient by a physician and the continuous representation of a client in a lawsuit by an attorney is more than superficial. In both instances the relationship between the parties is marked by trust and confidence; in both there is present an aspect of the relationship not sporadic but developing; and in both the recipient of the service is necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the tactics are executed." (*Siegel* v. *Kranis,* 29 A D 2d 477, 480. See, also, *Marine Midland Trust Co.* v. *Penberthy,* 60 Misc 2d 11.)

Here, however, the statutory defense may not be stricken on the basis that the accrual of plaintiff's cause of action was suspended during a continuance of the attorney-client relationship. The defendant's retainer by the plaintiff was terminated in 1966 and there is no claim by plaintiff that the defendant continued to represent it in the litigation or in any other manner within a period of three years prior to the commencement of the action.

Special Term, in effect rejecting the general holding and realizing the inapplicability of the continuous representation exception, held that, " although the malpractice alleged herein occurred in 1964 upon the occasion of defendant's alleged failure to sue the owner of the property involved," it was timely brought because " it was not until 1969 when the Appellate Division reversed a judgment obtained against the wrong owner [City of New York and Board of Education] that the plaintiff became aware of defendant's mistake." But the basis for Special Term's determination is unsupportable on general principles and on specific authority. " Knowledge of the invasion of a right has not been considered critical in determining the time when a cause of action accrues." (*509 Sixth Ave. Corp.* v. *New York City Tr. Auth.,* 15 N Y 2d 48, 51.) This is the general rule applied in this State in medical malpractice cases (see *Schiffman* v. *Hospital for Joint Diseases,* 36 A D 2d 31, *supra*; *Dobbins* v. *Clifford,* 39 A D 2d 1, 2). Furthermore, there is specific authority in this State and general authority elsewhere to the effect that the accrual of a cause of action for attorney malpractice is not postponed until time of discovery. (See, e.g., *Crowley* v. *Johnston,* 96 App. Div. 319, *supra*; *Troll* v. *Glantz,* 57 Misc 2d 572, *supra*; *Goldberg* v. *Bosworth,* 29 Misc 2d 1057, *supra*; *Seger* v. *Cornwell,* 44 Misc 2d 994, *supra.* See, also, cases cited Ann. 18 ALR 3d, p. 996, § 6.) Moreover, it is held that even a concealment of the facts by the attorney will not toll the statute. (See *Troll* v. *Glantz, supra,* p. 574, and cases cited.)

With due regard to the general holding of the decisions cited in the preceding paragraph and although the Legislature has repeatedly rejected proposals to fix a limitation period in malpractice causes based on the time of discovery (see legislative history as set forth by BREITEL, J., in dissenting opn. *Flanagan* v. *Mt. Eden Gen. Hosp.*, 24 N Y 2d 427, 439), the courts in this State have applied a time of discovery rule in those medical malpractice cases involving " foreign objects " in a plaintiff's body and in cases of internal injury malpractice where discovery is difficult (see *Flanagan* v. *Mt. Eden Gen. Hosp., supra*; *Murphy* v. *St. Charles Hosp.*, 35 A D 2d 64; *Dobbins* v. *Clifford, supra*). But it is held that it is doubtful whether the role of the Appellate Division as an intermediate appellate court would allow it " to depart further from the traditional view of the Statute of Limitations than *Flanagan* sanctions; a question of public policy in the interpretation of the statute and the balance between the Legislature and the courts in changing a rule of law is plainly raised, which the close division in the votes of the members of the court in *Flanagan* demonstrates " (*Schiffman* v. *Hospital for Joint Diseases*, 36 A D 2d 31, 33, *supra*).

In any event, should we assume that the *Flanagan* holding should be broadly applied to attorney malpractice cases where the malpractice is concealed or where discovery thereof would not become available or manifest in the exercise of due diligence,[1] the record before us nevertheless requires a determination sustaining the defense of the Statute of Limitations.[2] The facts involving the negligent omissions of the defendant attorney, as alleged here, were patent and readily discoverable. The conveyance of title to the school building property to the Housing Authority appeared as a matter of record and, of course, the plaintiff knew or should have known that it was prosecuting its claim against the city and the Board of Education and that it had not verified and filed a claim against the Authority. Moreover, in 1966, upon the termination of the defendant's retainer, the plaintiff became represented by other attorneys who pro-

1. It is noted " that commentators have expressed the belief that the cause of action for all cases of malpractice should begin to run from the time when the patient actually discovered, or with due diligence should have discovered, the negligent act (note, 29 U. Pitt. L. Rev. 341; comment, 21 Rutgers L. Rev. 778) ", but the Second Department has held that they cannot agree to such a rule. (*Schiffman* v. *Hospital for Joint Diseases, supra*, p. 35.)

2. There is some evidence in the record that the plaintiff, more than three years before the bringing of this action, was aware that the title to the adjoining school building was vested in the Housing Authority at the time of the accident and that the defendant had failed to timely proceed against such Authority. Even if there were issues of fact in this connection, the defense was improperly stricken.

ceeded with the prosecution of plaintiff's claim only against the city and the Board of Education, and they knew or should have known that the title to the school property had been vested in the Housing Authority but that no claim had been filed against it. If the plaintiff was in fact ignorant at these times of the existence of a cause of action in his favor against the defendant attorney, the facts were readily available to it. Accordingly, its ignorance would "not in itself lengthen the Statute of Limitations when the facts are available to him". (*Schiffman* v. *Hospital for Joint Diseases, supra,* p. 34, and cases cited.)

Finally, there is noted plaintiff's argument that the injury resulting from the malpractice occurred at the time of the determination of the Appellate Division setting aside its judgment obtained against the City of New York and the Board of Education; that the plaintiff's cause of action against the defendant then accrued because it was then that the plaintiff sustained its injury. The dissent agrees with this argument, concluding that the "plaintiff had suffered no damage" until the reversal of the plaintiff's said judgment. But the reasoning in and the conclusion reached on such an approach to the problem are clearly unsupportable. The determinations of the appellate courts were not the cause of plaintiff's injury. Actually, the injury to the plaintiff occurred because of the loss of its cause of action against the Housing Authority and not because of the ultimate determination that plaintiff had no cause of action against the city and the Board of Education.

The injury to the plaintiff was complete and its cause of action for all resulting damages accrued at the time of the loss of the cause of action against the Housing Authority by reason of the alleged negligent failure to file a claim against the Authority. It was then that plaintiff sustained its injury and not later when it is argued that its damages developed or became certain. (See *Wilcox* v. *Plummer*, 4 Pet. [29 U. S.] 172, 181.) As stated in the landmark case of *Schmidt* v. *Merchants Despatch Transp. Co.* (270 N. Y. 287, 300–301), "the injury occurs when there is a wrongful invasion of personal or property rights and then the cause of action accrues. Except in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. Consequential damages may flow later from an injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise. So far as such consequential damages

may be reasonably anticipated, they may be included in a recovery for the original injury, though even at the time of the trial they may not yet exist. When substantial damage may result from any wrong affecting the person or property of another, a cause of action for such wrong immediately accrues [citing cases].'' (See, also, *Schwartz* v. *Heyden Newport Chem. Corp., supra,* p. 216.)

In effect, in the words of the *Schmidt* decision, the plaintiff here '' is asking this court to hold that the statutory period of limitation begins only from the time that the plaintiff had reasonable assurance that serious damage had resulted or would result from past injury. The statute provides in unambiguous language that the period of limitation begins to run at the moment when right to begin an action accrues.'' (*Schmidt* v. *Merchants Despatch Transp. Co., supra,* p. 301). The statutory language (CPLR 203, subd. [a]; 214, subd. 6) must be given effect in the circumstances of this case.

In accordance with the foregoing, the order entered May 17, 1972 should be reversed on the law, with costs and disbursements to defendant, the plaintiff's motion to strike the affirmative defense of the Statute of Limitations from defendant's answer denied, and defendant's cross motion for an order dismissing plaintiff's complaint as time-barred by the Statute of Limitations, granted, with costs.

NUNEZ, J. (dissenting). In 1963 plaintiff corporation retained defendant, an attorney at law, to represent it in an action to recover property damages. The claim was that the negligent demolition of a structure upon land adjoining plaintiff's property caused the damage. Defendant had served a timely notice of claim against the City of New York and the Board of Education prior to commencement of the action in 1964. At the trial, in December, 1967, the defendants proved that the City of New York had conveyed the property abutting plaintiff's premises to the New York City Housing Authority on February 15, 1963. However, and most importantly, the City of New York, in its answer, had admitted ownership of the premises that were demolished in 1963. The trial court denied the city's motion to amend its answer to deny ownership. Judgment in a substantial sum was entered in plaintiff's favor in August, 1968. This court, in September, 1969, reversed and dismissed the complaint (33 A D 2d 175) and the Court of Appeals affirmed without opinion (27 N Y 2d 594).

It has now been established that the defendant sued the wrong parties in plaintiff's action for damages to its property. But

this controlling fact — the reversal of the judgment in plaintiff's favor — did not occur until September, 1969. Up to that time plaintiff had suffered no damage. On the contrary, he had recovered a judgment against a solvent defendant for the full amount of his damages.

As in *Siegel* v. *Kranis* (29 A D 2d 477 [2d Dept., 1968]) I would hold that a client's cause of action against his attorney for malpractice in failing to file a claim timely, does not accrue when the time to file expired, but at a later date when there has been a finding (in *Siegel* by a jury, in our case by the court) that the filed claim or notice was untimely.

To hold that this plaintiff should have sued his former lawyer at any time prior to a finding of untimely filing and, indeed in the face of a recovery for its damages is, to say the least, most unreasonable. It places an undue burden on the lay public and results in unfair advantage to the lawyer. I would affirm the order dismissing the affirmative defense of the three-year Statute of Limitations.

STEVENS, P. J., and MURPHY, J., concur with EAGER, J.; NUNEZ, J., dissents in opinion.

Order, Supreme Court, New York County, entered on May 17, 1972, reversed, on the law, plaintiff's motion to strike the affirmative defense of the Statute of Limitations from defendant's answer denied, and defendant's cross motion for an order dismissing plaintiff's complaint as time-barred by the Statute of Limitations granted, and the complaint dismissed. Appellant shall recover of respondent $60 costs and disbursements of this appeal.