**Donald LEON, Plaintiff–Appellant,**

v.

**John MURPHY, as Acting Executive Director of the New York City Employees' Retirement System, The New York City Employees' Retirement System, The Board of Trustees of the New York City Employees' Retirement System, The New York City Housing Authority, Lynne Shea, as Acting General Manager of the New York City Housing Authority, Harvey Bugner, and Evelyn Rivera, Defendants–Appellees.**

**No. 150, Docket 92–7461.**

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1992.
Decided March 5, 1993.

Edgar Pauk, New York City (Legal Services for the Elderly, of counsel), for plaintiff-appellant.

Jane S. Earle, Asst. Corp. Counsel of the City of New York, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York, Francis F. Caputo, Charles L. Finke, Asst. Corp. Counsel of the City of New York, of counsel), for defendants-appellees John Murphy, The New York City Employees' Retirement System, and The Bd. of Trustees of the New York City Employees' Retirement System.

Thomas S. Rosenthal, Counsel, New York City Housing Authority, New York City (Alan D. Aviles, Gen. Counsel, New York City Housing Authority, Terrence B. Schwartz, Myung Kang–Huneke, Counsel,

New York City Housing Authority, of counsel), for defendants-appellees New York City Housing Authority, Lynne Shea, Harvey Bugner, and Evelyn Rivera.

Before: VAN GRAAFEILAND, WINTER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Donald Leon appeals from a judgment entered April 13, 1992 in the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge*, that granted defendants-appellees' motions for summary judgment with respect to plaintiff's federal claims brought pursuant to 42 U.S.C. § 1981 (1988) *et seq.*, and dismissed plaintiff's state law claims without prejudice. For the reasons that follow, we affirm.

### Background

Leon was hired by the New York City Housing Authority ("NYCHA") as a painter on May 13, 1985 as a provisional employee, and acquired civil service status on March 24, 1986. Upon obtaining civil service status, Leon was asked to report to NYCHA's offices for an orientation session on April 10, 1986. At the orientation, Leon received numerous documents, including an application for enrollment in the New York City Employees' Retirement System ("NYCERS"). Leon also received a pamphlet entitled "Facts About Your Pension." [1]

Leon alleges that he completed his NYCERS application on April 10, 1986, and that he left it with NYCHA to be forwarded to NYCERS. Neither NYCERS nor NYCHA have any record of an application for membership in NYCERS ever having been filed by Leon. Pursuant to the New York City Administrative Code, civil service employees who do not complete and file membership applications with NYCERS automatically become NYCERS members six months after achieving civil service status. N.Y., Admin.Code, § 13–104 (1986).

Leon alleges that on April 30, 1986, after his second bimonthly paycheck did not include a deduction for his pension contribution, he contacted the NYCHA payroll department and spoke to an employee identified as "Robert" to inquire about his membership. Leon alleges that "Robert" told him not to worry, and that his pension deductions would "start eventually" and would be "retroactive." Leon further alleges that on May 30, 1986, a pension deduction for over $200 was taken out of his bimonthly paycheck, and that when he contacted "Robert" to inquire about the size of the deduction, Leon was told that the deduction was so large because it was retroactive to March 24, 1986—the date he first attained civil service status. NYCHA's payroll records indicate, however, that the first pension deduction was made from Leon's check a year later, on May 30, 1987.

On July 7, 1986, while on the job, Leon suffered a permanently disabling injury to three fingers of his right hand and received worker's compensation benefits from July 1986 to January 1987. Because NYCERS had not received a voluntary application for membership, Leon was "mandated" into NYCERS pursuant to the Administrative Code on September 24, 1986, six months after attaining civil service status.

Leon alleges that sometime in August 1986, and again in December 1986 or January 1987, he was told by "Robert" that "he

---

1. In its relevant sections, the pamphlet stated:
     2. Membership
     All persons who receive permanent appointment to a position in the competitive class are required to become members of [NYCERS] upon completing six months of service, but may voluntarily join [NYCERS] within six months from the date of appointment.
     \* \* \* \* \* \*
     10. Disability Retirement Benefits
     \* \* \* \* \* \*
     (2) 12 MONTHS FOR MEDICAL [LEAVE OF ABSENCE]

     A pension member may file an application for non-accident disability retirement or accident disability retirement up to *twelve* months after the employee's last day on payroll if the member:
     (a) Was on leave of absence, for medical reasons, without pay (or receiving Worker's Compensation payments) during the period, *and*
     (b) Was disabled on his/her last day of payroll.

must wait one year from the accident date, and then, if he was still disabled, he could apply for an accidental disability pension from NYCERS." Leon's verified complaint also includes the allegation, contradicted by NYCHA's payroll records and apparently abandoned on appeal, that beginning in or about January 1987, "each one" of his regular paychecks showed a pension deduction of over $200.

NYCERS asserts that it prepared on October 28, 1986 a two-page document entitled "Certification of Rate of Deduction" (the "Certificate") that showed Leon's "membership date" in NYCERS to be September 24, 1986, and also an "effective date" of September 24, 1986. A copy of this document allegedly was mailed to Leon by NYCERS in November 1986 in accordance with NYCERS' standard office procedures. A second copy was sent to the employing agency, in this case NYCHA, and NYCERS retained two copies—one in Leon's "NYCERS file jacket." Leon maintains that he never received this mailing. Additionally, Leon's wife, who opens the family mail, also asserts that the Certificate was not received.

NYCERS asserts that in December 1986 it sent Leon a "forced-in" letter dated December 3, 1986 (the "Mandate Letter") mandating his membership in NYCERS. The Mandate Letter stated in pertinent part:

> Under the laws governing this system membership for permanent City–Employees is mandatory within six months from date of permanent appointment.

> Your department has advised that you have completed six months of Civil–Service and have not become a member of this system.

> Accordingly, a rate of 3% under Article 15 (Tier IV), has been certified to your department as the basis for all pension deductions to be made from your salary, effective *9–24–86* six months from your permanent appointment date as required by law.

As in the case of the Certificate, Leon and his wife aver that they never received the Mandate Letter.

On July 16, 1987, Leon filed a pension application with NYCHA which was forwarded to NYCERS. In a letter mailed to Leon dated December 31, 1987, NYCERS responded as follows:

> We have received your application for Accident Disability Retirement filed July 23, 1987 in which you claim to be disabled for performance of city service due to an accident which occurred on July 7, 1986.

> I must inform you that you became a member of the Retirement System on September 24, 1986. Therefore your accident occurred *before* you became a member. Under the provisions of laws governing disability retirements "a member in city service may apply for retirement ... if incapacitated as a result of accidental injury received in city service while a member." You are not eligible for accident disability retirement based on the accident claimed prior to your membership, and we cannot process your application.

> If you have any questions, you may telephone this office.

Leon concedes that he received this letter sometime in January 1988.

On September 20, 1988, Leon filed a notice of claim with NYCHA which alleged that NYCHA had negligently lost, misplaced, or failed to deliver to NYCERS his April 10, 1986 application for membership in NYCERS. The notice was rejected as untimely by NYCERS on or about December 7, 1988.

Consequently, Leon filed a state court action seeking a declaration that his notice of claim was timely, or alternatively seeking permission to file a late notice. The New York Supreme Court, New York County, denied Leon's application to file a late notice of claim because Leon "failed to offer a satisfactory explanation for the seven month delay in filing his Notice of Claim." *Leon v. NYCHA*, No. 25152/88 (order filed Jan. 27, 1989). Leon's motion for renewal and reargument was also denied. *Id.* (order filed May 5, 1989).

On appeal, the denial was affirmed by the Appellate Division, First Department.

*Leon v. NYCHA*, 157 A.D.2d 628, 550 N.Y.S.2d 646 (1st Dep't 1990). The Appellate Division stated:

> The cause of action against [NYCHA] accrued no later than September 1986, when [NYCHA] acted to have petitioner automatically become a member of [NYCERS]. As of that time, any negligence on the part of [NYCHA] had already occurred; the fact that [Leon] may have learned of the existence of the cause of action only at the time of [NYCERS'] formal rejection of his pension application does not alter this rule of accrual (*Gilbert Props. v. Millstein*, 40 A.D.2d 100 [338 N.Y.S.2d 370 (1st Dep't 1972), *aff'd*, 33 N.Y.2d 857, 352 N.Y.S.2d 198, 307 N.E.2d 257 (1973)]; *Kitonyi v. Albany County*, 128 AD2d 1018 [513 N.Y.S.2d 555 (3d Dep't 1987)]). Thus, the court was required to deny the motion for leave to file a late notice of claim as the claim had been filed more than one year and 90 days after the accrual of the cause of action (General Municipal Law § 50–e; Public Housing Law § 157). We note that had the court had discretion in this matter, the determination that the eight-month delay in filing the notice of claim, after [NYCERS] rejected the disability pension application, was prejudicial to [NYCHA's] ability to investigate the claim was sufficient to support denial of the motion under the circumstances of this case (*see, Matter of Gerzel v. City of New York*, 117 AD2d 549 [499 N.Y.S.2d 60 (1st Dep't 1986)].

*Id.* at 629, 550 N.Y.S.2d at 647. The New York Court of Appeals denied Leon's motion for leave to appeal on June 7, 1990. *Leon v. NYCHA*, 76 N.Y.2d 702, 559 N.Y.S.2d 239, 558 N.E.2d 41 (1990).

On December 28, 1990, Leon commenced this federal action against both NYCHA and NYCERS. The complaint stated eight federal claims and six pendent state-law claims. Two of the claims, the first and eighth, alleged that NYCHA's and NYCERS' actions and rules deprived Leon of a constitutionally-protected property interest, his pension. The remaining federal claims alleged that NYCHA and NYCERS, and their various agents, engaged in a conspiracy to conceal the loss of Leon's April 10, 1986 pension application.

The district court dismissed the complaint in response to defendants-appellees' motions for summary judgment. The court held that, in accordance with *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989), "[f]ederal courts sitting in the State of New York apply New York's three-year personal injury statute of limitations (CPLR § 214(5)) to § 1983 cases." The court concluded that because the injury pled in Leon's federal complaint was the same as that pled in Leon's state court complaint, and because Leon had "a full and fair opportunity to litigate the issue of accrual of his claim" in state court, he was collaterally estopped from relitigating that issue against either NYCHA or NYCERS. The district court held, based upon the New York determination, that Leon's claims accrued no later than September 24, 1986. Consequently, counts one and eight of his complaint were barred under the applicable three-year statute of limitations.

With respect to the conspiracy claims, the court held that Leon failed to set forth specific facts supporting the allegations of fraud and conspiracy, and accordingly failed to state a claim upon which relief could be granted. Having dismissed all of Leon's federal claims, the court declined to exercise jurisdiction over Leon's remaining state law claims and dismissed them without prejudice.

During oral argument of his appeal, Leon's counsel made an oral motion to supplement the record on appeal. We permitted Leon to submit his motion in writing after argument. Leon's written motion requested that the record on appeal be supplemented to include copies of the Certificate bearing handwritten notations that were not present on the version of the Certificate included in the record and appendix. The annotated copies of the Certificate had apparently been submitted to the district court but never docketed as part of the record. We granted the motion.

Leon also sought sanctions against defendants-appellees with respect to their submissions in opposition to Leon's motion. We deny the application for sanctions.

## Discussion

On appeal, Leon asserts that the district court erred in granting summary judgment dismissing his federal claims on the bases that: (1) his complaint was barred by the statute of limitations, and (2) he had failed to plead the facts of the alleged conspiracy with adequate specificity. Leon does not independently challenge the dismissal of his pendent state claims.

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Murray v. NBC*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

■ We review the district court's grant of summary judgment by the same standards, on a *de novo* basis. *See Sure–Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 872 (2d Cir.1991); *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir.1989). We may affirm, however, on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely. *Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir.1991) (collecting cases).

### A. Accrual of Leon's Cause of Action.

Leon claims that the district court erroneously held that counts one and eight of his complaint were barred by the statute of limitations. New York's three-year statute of limitations for personal injuries applies to these claims, brought pursuant to 42 U.S.C. § 1983 (1988). *See Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir.1989) (citing *Owens*). After reviewing the doctrine of collateral estoppel, the district court gave preclusive effect to the Appellate Division's determination that Leon's claims accrued no later than September 1986. In order to apply collateral estoppel, the district court was required to conclude that the issue of accrual was necessarily determined by the state court, and that Leon had a full and fair opportunity to litigate that issue. This is the New York rule, *see Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985), and federal courts must accord New York court decisions "the same full faith and credit . . . as they have by law or usage in the courts of [New York]." 28 U.S.C. § 1738 (1988); *see Cullen v. Margiotta*, 811 F.2d 698, 732–33 (2d Cir.) (applying § 1738 to claim of collateral estoppel), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

"Under the doctrine of collateral estoppel, . . . a judgment [on the merits in a prior suit] precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). In the state court action, Leon had, and exercised, the opportunity to litigate the issue regarding the time when his cause of action accrued for purposes of state law. The Appellate Division determined, however, that Leon's cause of action accrued on September 24, 1986 even if Leon "may have learned of the

existence of the cause of action only at the time of [NYCERS'] formal rejection of his pension application" in December 1988. 157 A.D.2d at 629, 550 N.Y.S.2d at 647.

■■■■ This ruling is not controlling here. "Federal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used." *Morse v. University of Vt.*, 973 F.2d 122, 125 (2d Cir.1992) (citing *Cullen*, 811 F.2d at 725). Further, under federal law, a cause of action accrues when the plaintiff " 'knows or has reason to know' " of the injury that is the basis of the action. *See Cullen*, 811 F.2d at 725 (quoting *Pauk v. Board of Trustees of City Univ.*, 654 F.2d 856, 859 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982)). Whether Leon knew or had reason to know that his cause of action accrued by September 24, 1986 was not decided in the state court action. Accordingly, the district court incorrectly ruled that Leon was collaterally estopped from litigating the issue of accrual.

■■■■ However, there remains no genuine issue of material fact precluding summary judgment with respect to the issue whether Leon knew or had reason to know of his claim prior to December 28, 1987—three years before the instant action was commenced. NYCERS contends that it sent Leon both the Certificate (dated October 26, 1986, assertedly mailed in November 1986) and the Mandate Letter (dated December 3, 1986, assertedly mailed in December 1986), both of which notified Leon in 1986 that he had become a member of NYCERS only on September 24, 1986. NYCERS has produced file copies of these documents, and has provided affidavits as to the regular office mailing procedures followed with respect to their mailing. The only evidence provided by Leon was his and his wife's denials that they ever received these notices.

In *Meckel v. Continental Resources Co.*, 758 F.2d 811 (2d Cir.1985), we ruled that: [U]nder New York law personal knowledge [of mailing procedures] is required only to establish regular office procedure, not the particular mailing. Here, the presence of such proof establishes

prima facie evidence of the mailing and creates a rebuttable presumption as to receipt....

[A]ppellants deny that they received the notice.... New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption. There must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable. *See Nassau Insurance Co. v. Murray*, 46 N.Y.2d 828, 829–30, 414 N.Y.S.2d 117, 386 N.E.2d 1085 (1978).

*Id.* at 817; *see also Engel v. Lichterman*, 95 A.D.2d 536, 544, 467 N.Y.S.2d 642, 647 (2d Dep't 1983) (mere denial of receipt does not raise a question of fact as to mailing), *aff'd mem.*, 62 N.Y.2d 943, 479 N.Y.S.2d 188, 468 N.E.2d 26 (1984); *cf. Vita v. Heller*, 97 A.D.2d 464, 464, 467 N.Y.S.2d 652, 653 (2d Dep't 1983) (per curiam) (affidavit of secretary that records kept concerning receipt of pleadings created issue of fact as to receipt of pleading for which no record of receipt existed).

Further, the conceded receipt in January 1988 of a subsequent NYCERS letter mailed to Leon at the same address bolsters the inference that prior NYCERS mailings to that address were received there. *See Riverhead Sav. Bank v. Garone*, 183 A.D.2d 760, 762, 583 N.Y.S.2d 483, 485–86 (2d Dep't 1992). Even if New York law is not regarded as controlling on this issue, moreover, we find these authorities persuasive on the facts of this case. Accordingly, the denials by Leon and his wife as to receipt of these notices do not raise an issue of triable fact on this record. Leon must be deemed to have received notice that he was not a member of NYCERS until September 24, 1986 by—at the latest—December 1986.

The documents submitted via Leon's postargument motion do not alter this conclusion. Leon contends that handwritten

notations, "10/87," on a copy of the Certificate from NYCHA's files may establish that the Certificate was mailed to him as late as October 1987. Notations on copies of the Certificates in NYCHA's files are hardly probative of when the Certificate was mailed by NYCERS, and NYCHA proffered a plausible explanation for the "10/87" notation that had nothing to do with a mailing date. Even such a mailing date for the Certificate, we note, would in no way impugn a December 1986 mailing of the Mandate Letter, and would still render the commencement of this action in December 1990, more than three years later, untimely.

■ In § 1983 actions filed in New York, " 'federal courts [are] obligated not only to apply the analogous New York statute of limitations to ... federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations.' " *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990) (per curiam) (quoting *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980)) (alteration in *Jewell*); *see also Hardin v. Straub,* 490 U.S. 536, 539–40, 109 S.Ct. 1998, 2000, 104 L.Ed.2d 582 (1989).

New York has codified the circumstances under which a limitations period may be tolled. These include, *inter alia,* periods during which: (1) the commencement of an action has been stayed by court order or by statute, N.Y.Civ.Prac. L. & R. § 204(a) (McKinney 1990); (2) a dispute that is ultimately determined to be nonarbitrable has been submitted to arbitration, *id.* § 204(b); (3) the defendant is outside New York when and after a claim accrues against him, *id.* § 207; and (4) the plaintiff is disabled by infancy or insanity when and after his claim accrues. *Id.* § 208; *see also Jewell,* 917 F.2d at 740 & n. 1 (reviewing New York tolling provisions). None of these situations is applicable to the instant case.

■ Nonetheless, a court may also estop a defendant's assertion of the statute of limitations on the basis of the defendant's misconduct in delaying the plaintiff from prosecuting a legitimate cause of action. *Jewell,* 917 F.2d at 740 n. 1; *see also* N.Y.Civ.Prac. L. & R. § 201 cmt. 6 (McKin-

ney 1990) (estoppel applied when: (1) defendant conceals from plaintiff the fact that he has a cause of action, or (2) plaintiff is aware of claim, but defendant induces plaintiff to forgo suit until period of limitations expires). Accordingly, we next consider whether such an estoppel should apply in this case.

Leon alleges that "Robert," an NYCHA payroll department employee, told him both in August 1986 and again in December 1986 or January 1987 that he would have to wait one year from his (July 1986) accident to apply for an accidental disability pension from NYCERS. Further, when Leon made such application in July 1987, NYCERS only advised him of its rejection by letter dated December 31, 1987 that he received in January 1988.

At that juncture, however, Leon had ample time to bring a federal action, no matter when the three-year limitations period might be deemed to have commenced. The fact that he opted instead to initiate a state action, and did not commence a coordinate federal action to forestall a limitations defense, does not establish any estoppel claim against NYCERS or NYCHA. *Cf. Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465–66, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) (limitation period expired when plaintiff failed to file § 1981 action during pendency of proceedings before EEOC; Court "find[s] no policy reason that excuses petitioner's failure to take the minimal steps to preserve each claim independently").

We conclude that Leon's claim accrued no later than December 1986, and that there is no basis for an extension of the applicable three-year limitations period by tolling or estoppel. Accordingly, we hold that the district court correctly granted summary judgment as to counts one and eight of Leon's complaint because they were barred by the statute of limitations.

## B. *Conspiracy Claims.*

The district court found that Leon did not allege any specific facts supporting his allegations of fraud or conspiracy, but rather "only [alleged] that such fraud or conspiracy existed 'on information and belief.' " Further, the court also found that

Leon's "papers in opposition to defendants' motions for summary judgment [do not] supply any basis for those allegations." Accordingly, the court held that defendants-appellees were entitled to judgment on those counts as a matter of law.

"A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.) (per curiam) (citing *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981); *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981)), *cert. denied*, 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); *see also Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987). Leon contends that his complaint set forth sufficient facts to support a prima facie case of conspiracy. The complaint alleges that: (1) NYCHA willfully failed to request that Leon file a new membership application in order to conceal from him, until after the running of the statute of limitations, NYCHA's failure to forward his April 10, 1986 application to NYCERS; (2) NYCHA concealed Leon's cause of action in tort until after the expiration of the limitations period; (3) the five months NYCERS took to reject Leon's request for a pension was part of the conspiracy to conceal the loss of his earlier application; and (4) NYCHA's employees conspired with NYCERS to conceal the loss of the application. These allegations are unsupported by any specifics, and many of them are flatly contradicted by the evidence proffered by defendants during discovery and in support of the motion for summary judgment.

A " ' "mere hope" ' " on Leon's part that " ' "further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [summary judgment]." ' " *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir.) (quoting *Contemporary Mission*, 648 F.2d at 107) (quoting *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir.1978)), *cert. denied*, — U.S. —, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991). As a result of discovery, Leon apparently has been provided with most or all of the files maintained by NYCERS and NYCHA regarding him. Especially in this context, his bare allegations of conspiracy against NYCERS and NYCHA are insufficient to create a triable issue of fact. Accordingly, the district court was well within its discretion in granting summary judgment to defendants-appellees. *Cf. Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir.1985) (" '[W]here a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judgment.' ") (quoting *Contemporary Mission*, 648 F.2d at 107).

Conclusion

The judgment of the district court is affirmed.

