Walter ARASIMOWICZ, James J. Harrington and Eugene Meyung, Plaintiffs,

v.

BESTFOODS, INC. and Bestfoods Baking Company, Inc., Defendants.

No. 99 Civ. 8977(CM).

United States District Court, S.D. New York.

Feb. 7, 2000.

Robert A. Horowitz, Paul, Hastings, Janofsky & Walker, Stamford, CT, for Bestfoods, Inc., defendants.

AMENDED MEMORANDUM ORDER AFFIRMING THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE YANTHIS DATED NOVEMBER 9, 1999, AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.

McMAHON, District Judge.

*Summary*

Plaintiff Walter Arasimowicz has been a distributor of Thomas' English Muffins, a well-known bakery product manufactured by Defendant Bestfoods Baking Company, since 1967. As a "multiple" distributor, he controls more than one delivery route. Plaintiffs James J. Harrington and Eugene Meyung are "sub-distributors" of Arasimowicz. Defendant Bestfoods Baking Company is the corporate successor to S.B. Thomas, Inc. and is a wholly-owned subsidiary of Defendant Bestfoods, Inc. (hereinafter "Bestfoods"). In July 1999, Bestfoods notified Arasimowicz that it was terminating his distribution rights. Plaintiffs thereafter brought this suit asserting three claims: (1) breach of contract; (2) breach of common law franchise; and (3) equitable estoppel. They moved for a preliminary injunction to enjoin Bestfoods from terminating the distributorship pending the outcome of this litigation. Pending the outcome of that motion, the parties agreed to stay the termination of Arasimowicz's distributorship and the Defendants' planned restructuring of Arasimowicz's delivery routes.

Following submission of papers by the parties and an evidentiary hearing, Magistrate Judge Yanthis issued a Report and Recommendation to this Court, recommending that the motion for preliminary injunction be denied. Addressing the

breach of contract claim, Judge Yanthis found that Plaintiffs had failed to demonstrate irreparable harm and had also failed to demonstrate either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. He thus recommended that the Plaintiffs' application for preliminary injunction be denied.

For the reasons stated below, I affirm Judge Yanthis' Report and Recommendation and deny Plaintiffs' motion for a preliminary injunction.

*Review of the Report and Recommendation*

I review the findings in the Report and Recommendation of Judge Yanthis *de novo. See* Fed.R.CivP. 72(b). In considering his recommendation, I have reviewed the Plaintiffs' objections to the R & R, along with Defendants' response to those objections.

A. *Factual Background*

The distributorship arrangements at issue here are well known to this Court, as they are substantially the same as the Thomas' distributorship arrangements at issue in two other cases pending before me: *Smith, et al. v. CPC Int'l Inc., et al.,* 97 Civ. 1547, and *McGuiggan, et al. v. CPC, Int'l, Inc., et al.,* 97 Civ. 7241. In addition, the Second Circuit addressed facts and issues nearly identical to those present here in *Petereit v. S.B. Thomas,* 63 F.3d 1169 (2d Cir.1995), *cert. denied,* 517 U.S. 1119, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996).

On October 3, 1967, Stephen Kalinger, then District Sales Manager for S.B. Thomas, Inc., met with Arasimowicz to discuss Arasimowicz's planned purchase of a Pepperidge Farm distribution route from Peter Coleman and Mike Todara. At that time, Thomas was just beginning to sell its baked products in northeast Pennsylvania, and Coleman and Todara distributed Thomas' products along with the Pepperidge Farm products to the stores on their routes. At their meeting, Kalinger and Arasimowicz discussed the terms and conditions under which Arasimowicz would be permitted to distribute Thomas' products. The informal nature of the commencement of his distributorship was a common business practice of S.B. Thomas, Inc. in the late 1960s. *See Petereit,* 63 F.3d at 1173.

Arasimowicz paid $13,500.00 to Todara and Coleman for the Pepperidge Farm franchise and the rights to deliver the Thomas' products, and began delivering Thomas' products on October 9, 1967.

Defendant contends that, following the meeting, Kalinger prepared a letter (hereinafter "Confirmation Letter"), dated October 5, 1967, confirming what was discussed at the meeting. Defendant further contends that the Confirmation Letter was a standard form letter that was routinely sent to new Thomas' distributors to confirm what was discussed at the initial interview. A carbon copy of this letter, which was found in the Arasimowicz distributor file at Bestfoods, was submitted by Defendants as evidence of the terms of the contract between Arasimowicz and Thomas (Adair Decl. ¶ 3). The address on the copy of the letter was, and still is, Arasimowicz's mailing address. (Tr. 43–45).

In 1973, Bestfoods acquired S.B. Thomas, becoming its successor in interest. Beginning around that time, Bestfoods asked Arasimowicz to sever portions of his routes. As a result of Bestfoods' request, Arasimowicz sold off parts of his route. He contends that he did not sell off his "rights" when he sold off portions of his route, since he retained a "multiple" distributorship, whereby sub-distributors paid him a percentage of their sales. He currently has three sub-distributors of Thomas' products: Harrington, Meyung and Tony Quinnan (not a party to this suit). He continues to also own the Pepperidge Farm franchise and to deliver Pepperidge Farm products.

In an undated letter sent sometime on or after July 7, 1999, Bestfoods notified

Arasimowicz in writing that it was terminating his distributorship as a result of company restructuring. Bestfoods offered to pay Arasimowicz $30,627.00 in exchange for releasing all his rights and claims against Bestfoods. (McLeod letter to Arasimowicz, undated). In a subsequent letter dated July 13, 1999, Bestfoods notified Arasimowicz that, based on "plans to restructure [Bestfoods'] distribution system in this market area," effective August 28, 1999, his distributorship would be terminated. (McLeod letter to Arasimowicz, July 13, 1999). The letter to Arasimowicz indicated that Harrington and Meyung's sub-distributorships would also be affected by the termination: Harrington was offered a position as a non-equity route driver; Meyung was to be terminated. Arasimowicz rejected the offer.

On August 17, 1999, Plaintiffs filed this action. Plaintiffs then moved for a preliminary injunction pursuant to Rule 65(a) to enjoin Defendants from terminating or otherwise adversely impacting Plaintiffs' distributor rights, which they claimed arose from the oral discussions made between Arasimowicz and Kalinger in October 1967.

### B. *Legal Conclusions*

Judge Yanthis based his recommendation on two findings: (1) that Plaintiffs failed to show irreparable harm and (2) that Plaintiffs failed to show a likelihood of success on the merits. I address each of these findings in turn.

#### (1) *Irreparable Harm.*

I adopt *in toto* Judge Yanthis' findings of fact and conclusion of law that Plaintiffs failed to show irreparable harm or that a remedy at law is inadequate. (Nov. 9, 1999 R & R at 5–7).

#### (2) *Likelihood of Success on the Merits*

Having affirmed the determination that Plaintiffs have an adequate remedy at law, I am not required to address whether Plaintiffs are likely to succeed on the mer-

its. But as Judge Yanthis spent some time discussing the merits, and because these issues go to the heart of the case (as well as the remaining claims in *Smith,* which I am consolidating with this case), I address them in turn.

The first issue raised by the objections is whether the copy of the letter that was contained in the Arasimowicz file at Bestfoods was properly admitted into evidence by Judge Yanthis. I find that it was.

#### a. *Evidentiary Issues*

■ Under the "ancient documents" doctrine of the Federal Rules of Evidence, a document that cannot be authenticated in the usual ways, e.g. through direct testimony, can nonetheless be admitted into evidence. *See* Fed.R.Evid. 901(8). In order to fall under this exception, the document must meet the following requirements: "(A) be in such a condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered." Fed.R.Evid. 901(8)

The letter was written on October 5, 1967. The copy produced by Defendants is a carbon copy of the letter, with the initials "S.K." in the area where a signature would be on an original. Jeffrey Adair, the current Regional Sales Manager for the Northeast Region of Bestfoods baking Company, submitted a sworn affidavit that the carbon copy was a true and correct copy of the October 5, 1967 letter and that he had obtained the carbon copy from Arasimowicz's distributor file, which was kept in his office. (Adair Aff.) In addition, Stephen Kalinger testified that he had knowledge of the letter and that it was what it claimed to be. He specifically stated that the document was "a form letter that was sent out with some minor changes specific to the case involved that was used for every new distributor." (Kalinger Dep. at 13). Kalinger's testimony confirmed the regularity of sending out

such letters to new distributors, making carbon ("onion skin") copies of the letters, and the standard procedure of placing the carbon copy in each distributor's "permanent file." (*Id.* at 13–15).

Plaintiffs offer no evidence that directly contradicts Kalinger's or Adair's authentication of the letter. Plaintiffs note that Kalinger signed a sworn affidavit in August 1999, in which he stated that, when Arasimowicz asked him in 1967 for a written "franchise" agreement like the one he received from Pepperidge Farm, Kalinger told Arasimowicz that it was not S.B. Thomas' policy to do so. In the August 1999 affidavit, Kalinger went on to say that he had assured Arasimowicz at the time that "the oral commitment given to him by S.B. Thomas was far stronger than anything that could be put in writing and that he was dealing with a company whose integrity and morality was beyond reproach." (Kalinger Dep. at ¶ 7.) However, this testimony—even assuming it to be an accurate recollection of events that occurred 32 years earlier—does not contradict Kalinger's authentication of the letter.

Arasimowicz claimed he never received the Confirmation Letter, although he stated at the October 12 evidentiary hearing that it was "possible" he might have received it. (Tr. Oct. 12, 1999 Hearing at 5) He also testified that he routinely destroys or discards all records that are over three years old. Thus, Arasimowicz's own testimony does not controvert the authenticity of the letter.

Kalinger's testimony, along with Adair's affidavit indicating that the carbon copy was found in the Arasimowicz file at Bestfoods, was therefore sufficient to meet the requirements of the ancient documents doctrine under Rule 901(8). I affirm Judge Yanthis' finding.

Judge Yanthis further found that the letter was admissible into evidence under the business records exception to the hearsay rule. *See* Fed.R.Evid. 803(6). I agree, and note that it is also admissible under the ancient documents exception to

the hearsay rule. *See* Fed.R.Evid. 803(16). Although not raised by either party or discussed by Judge Yanthis, I also note that, given the fact that the Confirmation Letter was a legally operative document (see below), once it was authenticated, the copy of the letter would be admissible as non-hearsay under Rule 801(c).

### b. *Contract Claim*

Judge Yanthis determined that the October 5, 1967 Confirmation Letter, which is admissible evidence, represented the fully integrated agreement of the parties. I affirm this finding.

It is well settled at common law that a letter of confirmation sent to the other party to an oral agreement is deemed to be a total integration of the terms of the agreement where the other party makes no response to it *and* the other party subsequently performs under the terms. *See* Calamari & Perillo, *Contracts* § 3–3. A letter of confirmation may be deemed a partial integration if it is clear from the letter that the terms are incomplete. *See id.* That is not the case here, as the letter was a comprehensive-and on this record, was the only-statement of the terms of the relationship between Arasimowicz and Thomas.

As noted above, the Second Circuit addressed the legal effect of Thomas' Confirmation Letters in *Petereit:*

A prospective distributor usually began its business relationship with Thomas by a meeting with a district or regional sales manager. At such meeting the Thomas representative would lay out the terms of the proposed business relationship. In these early informal years, the distributor would begin delivering product within days of the meeting; in some cases, he might have already started distributing Thomas products in the days immediately before the meeting. It was [Thomas'] business practice to have the sales manager send a letter to

the distributor shortly after the meeting or the commencement of the distributorship to confirm the terms previously agreed upon. *Petereit,* 63 F.3d at 1173. The *Petereit* court noted that "[a]lthough brief, the letters comprehensively reviewed the important aspects of the manufacturer-distributor relationship." *Id.* The Second Circuit went on to hold that "even if the letters were only partial articulations of the parties' agreements, the parol evidence rule would still operate to exclude oral testimony of contract terms inconsistent with those contained in the writings." *Id.* at 1177 (citing Connecticut law). Pennsylvania courts interpret the parol evidence rule in the same way. *See LeDonne v. Kessler,* 256 Pa.Super. 280, 389 A.2d 1123 (1978).

As in the letter purportedly sent to Arasimowicz, the letters at issue in *Petereit* specifically noted that distributor territory was not permanently assigned: "It is understood that we do not assign territory on a permanent basis, and our decision to continue to ship products for your distribution is contingent upon our satisfaction with this arrangement in the future." *Id.* at 1179. This is the *exact language* of the Confirmation Letter from Kalinger to Arasimowicz on October 3, 1967.

Under both Pennsylvania and New York law, a letter that is sent is presumed to be received. *See Berkowitz v. Mayflower Securities, Inc.,* 455 Pa. 531, 317 A.2d 584, 585 (1974) (presumption of receipt cannot be rebutted by mere denial); *Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir.1993) (citing *Nassau Insurance Co. v. Murray,* 46 N.Y.2d 828, 829–30, 414 N.Y.S.2d 117, 386 N.E.2d 1085 (1978)) (New York presumption). The *Petereit* Court concluded, if the plaintiff distributor can be presumed to have received the letter, and the letter reduced to writing any understanding that existed between the parties, the fact that a distributor had carried out his duties in conformity with the terms of that letter for

over thirty years would lead to the justifiable conclusion that he had accepted its terms. The Second Circuit noted:

[T]o hold otherwise, the recipient of a writing confirming the terms of a contemporaneous oral agreement could escape an unfavorable written provision that the recipient believes differs from the oral understanding simply by silence. The recipient could perform under the agreement and years later renounce the written terms of the contract to the surprise of the offeror. Such a rule would nullify the benefits of reducing an agreement to written form, and is one we decline to make. *Petereit* at 1178.

Arasimowicz's testimony that he did not receive the letter is irrelevant to this issue. In *Petereit,* some of the plaintiffs claimed never to have received the letters. Nevertheless, as to all plaintiffs for whom Bestfoods produced copies of the letters from its files, the Second Circuit deemed the letters to have been sent and received.[1] It thus held that regardless of the plaintiffs' claims not to have received the letters, the copies proffered by the defendant were the fully integrated agreement between the parties. *Id.*

Arasimowicz's testimony as to oral representations made by Thomas' representative, regardless of whether they were made before, after or contemporaneous with the issuance of the Confirmation Letter, is excludable under the parol evidence rule. *See Petereit,* 63 F.3d at 1178. I thus affirm Judge Yanthis' conclusion that the Confirmation Letter represented the fully integrated agreement of the parties.

The portion of the letter relevant to the question of contract breach reads: "We do not assign territory on a permanent basis, and our decision to continue to ship products for your distribution is contingent upon our satisfaction with this arrangement in the future." (Kalinger letter to

---

1. Only those plaintiffs for whom Bestfoods could not produce a file copy of the Confirmation Letter were deemed not to fall within the terms of the letter.

Arasimowicz, Oct. 5, 1967.) Examining the same language in *Petereit*, the Second Circuit found that "[T]he plain meaning of this sentence is that a distributor's territory is not permanent, but rather is subject to alteration, and that whether one continues as a distributor of Thomas' goods is conditional on [Bestfoods'] satisfaction." *Petereit*, 63 F.3d at 1179. The court concluded that termination could only be made for "good cause." *See id.* Alteration of routes and territory, however, would not require a showing of good cause. *See id.*

Defendants have presented evidence of the business rationale for the termination of Arasimowicz's route and the realignment of the delivery routes in northeastern Pennsylvania. Plaintiffs have offered no evidence to controvert Defendants' rationale, or even to place it in question. Thus, on their contract claim, Plaintiffs have failed to show either a likelihood of success on the merits, or a sufficiently serious question going to the merits to make them a fair ground for litigation. I thus adopt Magistrate Yanthis' recommendation, and deny Defendant's motion for a preliminary injunction.

*Common Law Franchise Claim*

■ I agree with Judge Yanthis that, in light of the terms of the Confirmation Letter, no common law franchise existed between Arasimowicz and Defendants. (Nov. 9, 1999 R & R at 15). Arasimowicz therefore fails to state a claim against Defendants, and the preliminary injunction on the basis of that claim is denied.

*Harrington and Meyung*

■ Judge Yanthis concluded that Meyung and Harrington have no contractual relationship with Bestfoods. (R & R at 13 n. 6). Although not discussed in the R & R, I assume that he based his conclusion on the fact that Plaintiffs proffered no evidence whatsoever that Meyung and Harrington had any agreement with Bestfoods. Rather, the only evidence in the record points to a finding that, despite the occasional contact with Bestfoods, Meyung and Harrington have some sort of contractual relationship with Arasimowicz; they paid Arasimowicz for their routes and received compensation (based on a percentage of their sales) from him for their deliveries of Thomas' products. I thus affirm Judge Yanthis' finding and hold that Meyung and Harrington have no contract or franchise claim against Defendants. They are therefore denied injunctive relief as well.

This constitutes the decision and order of this Court.